IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

RASHEIM HAGWOOD,                  :     CIVIL ACTION
                                  :     NO. 21-4966
          Plaintiff,              :
     v.                           :
                                  :
CITY OF PHILADELPHIA, et al.,     :
                                  :
          Defendants.             :


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                        May 25, 2022


## I.    INTRODUCTION

Plaintiff Rasheim Hagwood ("Plaintiff") brings this case against the City of Philadelphia ("Defendant" or the "City") alleging that Plaintiff was injured on Defendant's property as a result of a defective condition. Plaintiff brings a claim for negligence and two claims under 42 U.S.C. § 1983: a claim alleging the existence of a state-created danger, and a claim alleging the Defendant failed to train and supervise employees of the Department of Human Services and Philadelphia Juvenile Justice Services Center.

Defendant has moved to dismiss the claims against it. For the following reasons, Defendant's motion will be granted.

I.    **BACKGROUND**

    **A. Factual Background**

Plaintiff was employed by U.S. Facilities, Inc., a private company that provides building and facility management services. U.S. Facilities provides maintenance services for the Philadelphia Juvenile Justice Services Center ("PJJSC"), a juvenile services detention center where juveniles are held while they await their court hearings. The PPJSC facility is also maintained by the Department of Human Services ("DHS"). DHS and PJJSC are both City-run entities and do not have separate corporate existences from the City. The City and its employees are responsible for overseeing, supervising, and managing the juveniles at PJJSC.

Plaintiff alleges that, as part of his employment at U.S. Facilities, Plaintiff was responsible for answering service calls and performing maintenance and repair work at PPJSC. On October 26, 2019, Plaintiff was at PJJSC to perform maintenance work. Plaintiff was only allowed access to certain locations within the facility to assist PJJSC's staff, employees, and agents. Plaintiff alleges that Defendant's employees at PJJSC had to unlock certain doors to allow him access to restricted areas of PJJSC. However, Plaintiff was not accompanied by any security or staff while completing the maintenance work and

Plaintiff believed that the juveniles in the facility would not have access to the areas where Plaintiff was permitted to work.

Plaintiff alleges that while completing the maintenance work at PJJSC, a group of juveniles gained access to the area Plaintiff was working in because the locking mechanism on the door to the area was defective, broken, and/or improperly maintained. Sec. Am. Compl. ¶ 8, ECF No. 20. Plaintiff claims that, as a result, "he was attacked, beaten, and assaulted by multiple unrestrained juveniles who were being detained at PJJSC." Id. ¶ 18. Plaintiff alleges he was knocked unconscious and no one from PJJSC came to his assistance. Plaintiff also alleges that he sustained "injuries to his face, head, brain with concussion and post-concussive syndrome, tinnitus, and TMJ dysfunction, neck, back, right lower extremity, right knee, left lower extremity, left ankle, left upper extremity, left index finger, a facial contusion and neuralgia, PTSD, anxiety, as well as lacerations, scarring and disfigurement." Id. ¶ 80.

According to Plaintiff, he later learned from a detention counselor that such attacks happen all the time and, despite this, Defendant failed to restrain the juveniles. Plaintiff alleges that Defendant allowed the juveniles to roam freely in the facility despite knowing that there were previous breaches in security, issues with understaffing in the facility, and that the "staff responsible for inspecting security doors and

barricades frequently failed to properly conduct inspections."
Id. ¶ 64.

Plaintiff points to Michael Scott, the Executive Director
of PJJSC, Deana Ramsey, the principal of PJJSC, and Cynthia
Figueroa, the Commissioner of DHS, and alleges that their
deliberate indifference caused the facility to fail "to take or
institute necessary precautions to provide proper training,
policies, procedures, and adequate security." Id. ¶¶ 30, 34, 38.

**B. Procedural Background**

Plaintiff initially brought this case against the City,
DHS, and PJJSC in the Court of Common Pleas of Philadelphia
County. On November 10, 2021, the City, DHS and PJJSC removed
this case to federal court. On December 6, 2021, Plaintiff filed
an amended complaint (the "Amended Complaint") as a matter of
course. The City, DHS and PJJSC City, DHS and PJJSC moved to
dismiss the Amended Complaint. On March 4, 2021, the Court
dismissed Plaintiff's negligence and section 1983 claims for
failure to state a claim. DHS and PJJSC were dismissed as
defendants because they do not have independent corporate
existences from the City. Plaintiff then filed a second amended
complaint (the "Second Amended Complaint"). Defendant now moves
to dismiss all counts in the Second Amended Complaint. After
hearing oral argument on the relevant issues, Defendant's motion
is ripe before the Court.

## II.  LEGAL STANDARD

A party may move to dismiss a complaint for failure to
state a claim. Fed. R. Civ. P. 12(b)(6). When reviewing such a
motion, the Court is "required to accept as true all allegations
in the complaint and all reasonable inferences that can be drawn
from [the allegations] after construing them in the light most
favorable to the non-movant." Conard v. Pa. State Police, 902
F.3d 178, 182 (3d Cir. 2018) (quoting Jordan v. Fox, Rothschild,
O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994)).

However, "the tenet that a court must accept as true all of
the allegations contained in a complaint is inapplicable to
legal conclusions. Threadbare recitals of the elements of a
cause of action, supported by mere conclusory statements, do not
suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing
Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To
survive a motion to dismiss for failure to state a claim, a
complaint must "contain sufficient factual matter, accepted as
true, to 'state a claim to relief that is plausible on its
face.'" Id. (quoting Twombly, 550 U.S. at 570).

## III. DISCUSSION

### A. Negligence Claim

Defendant contends that Plaintiff's claim of negligence is
barred by the Pennsylvania Political Subdivision Tort Claims Act
(the "PSTCA"). The PTSCA grants immunity to political

subdivisions within Pennsylvania. See 42 Pa. C.S. § 8541
("Except as otherwise provided in this subchapter, no local
agency shall be liable for any damages on account of any injury
to a person or property caused by any act of the local agency or
an employee thereof or any other person."). However, this grant
of immunity is subject to certain exceptions. Under the PSTCA, a
local agency of the state shall be held liable for negligence
involving (1) vehicle liability, (2) care, custody or control of
personal property, (3) real property, (4) trees, traffic
controls and street lighting, (5) utility service facilities,
(6) streets, (7) sidewalks, (8) care, custody or control of
animals, or (9) sexual abuse. Id. § 8542(b).

    The parties do not dispute that the PSTCA applies.
Plaintiff contends, however, that his claim falls under the real
estate exception of section 8542(b)(3). On the other hand,
Defendant argues that the real estate exception applies only to
claims related to premises liability, rather than claims
involving harm caused by third parties. For support, Defendant
points to Mascaro v. Youth Study Ctr., which held that "the real
estate exception imposes a standard of liability on the
political subdivision to an extent no greater than that of a
private landowner" and which includes the "duty . . . to
maintain the property safely for the activities for which it is
regularly used, for which it is intended to be used, or for

6

which it may reasonably be foreseen to be used." 514 Pa. 351,
361-62 (1987). Thus, the "real estate exception [applies] only
to those cases where it is alleged that the artificial condition
or defect of the land itself causes the injury, not merely when
it facilitates the injury by the acts of others, whose acts are
outside the statute's scope of liability." Id. at 363. As the
Pennsylvania Supreme Court in Mascaro explained, "[t]he real
estate exception . . . has consistently been held to be
unavailable to those whose claim of negligence consists of a
failure to supervise the conduct of students or persons
adequately." Id. at 362.

Plaintiff seeks to distinguish Mascaro by arguing that the
real estate exception can also apply to situations where third
parties are involved in causing the alleged harm. Plaintiff
points to Wilson v. Philadelphia Housing Authority, 735 A.2d 172
(1999), a case in which the Commonwealth Court held that a
municipal agency could not be afforded immunity under a similar
exception to governmental immunity, section 8522(b)(4). Section
8522(b)(4) provides that sovereign immunity does not apply where
harm resulted from a "dangerous condition" on "Commonwealth
agency real estate and sidewalks, including Commonwealth-owned
real property, leaseholds in the possession of a Commonwealth
agency and Commonwealth-owned real property leased by a
Commonwealth agency to private persons, and highways under the

7

jurisdiction of a Commonwealth agency." 42 Pa. C.S. §
8522(b)(4). The Wilson court considered a situation where the
plaintiff was injured on a Commonwealth agency's property after
a third party pushed the plaintiff onto a pole stump, which was
deemed a dangerous condition on the property. 735 A.2d at 173,
175. The Wilson court held that the Commonwealth agency was not
immunized from the claim because the third party's action had
set in motion the plaintiff's fall. Id. at 175.

A court in this district subsequently applied Wilson's
logic to a case involving section 8542(b)(3), the exception at
issue in this case. Kornegey v. City of Philadelphia relies on
Wilson for support that under the real property exception, the
City "can be held liable for injuries set in motion by the
action of a third party when the negligently maintained property
proximately caused the injuries." 299 F. Supp. 3d 675, 682 (E.D.
Pa. 2018) (emphasis added). In Kornegey, the plaintiff was
injured after a third party forcibly caused the plaintiff to
collide with an exposed fixture on the City's property. Id. The
Kornegey court declined to dismiss the plaintiff's claim as
falling outside the scope of section 8542(b) because "it [was]
plausible that Plaintiff's injuries would not have been of the
same magnitude if not for the protrusion of the pipes, and
further factual development [was] needed." Id.

Unlike Wilson and Kornegey, Plaintiff does not allege that

8

a third party "set in motion" an action that caused an injury to
Plaintiff on Defendant's property. Instead, Plaintiff's theory
involves the reverse set of circumstances—here, a defect in the
locking mechanism of the door allowed the juveniles to gain
access to Plaintiff, who then caused the harm to Plaintiff.
Thus, Plaintiff's claim is outside the scope of section
8542(b)(3) and will be dismissed.

**B. Section 1983 Claims**

Plaintiff brings two claims pursuant to section 1983.
Section 1983 provides:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory
> or the District of Columbia, subjects, or causes to be
> subjected, any citizen of the United States or other
> person within the jurisdiction thereof to the
> deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to
> the party injured in an action at law, suit in equity,
> or other proper proceeding for redress . . . .

42 U.S.C. § 1983. The Supreme Court in Monell v. Dep't of Soc.
Servs., 436 U.S. 658 (1978), provided that municipalities may be
subject to section 1983 claims in limited circumstances.

Under Monell, a municipality, like the City, is not
responsible for the acts of its employees based on a theory of
respondent superior liability, but a municipality may be liable
if the injury was "inflicted by 'execution of a government's
policy or custom.'" Santiago v. Warminster Twp., 629 F.3d 121,

9

135 (3d Cir. 2010) (quoting Monell, 436 U.S. at 694) see also
Johnson v. City of Phila., 397 F. Supp. 3d 692, 709 (E.D. Pa.
2019) ("[A] municipality may be liable when an official policy,
custom, or deliberate indifference to the rights of citizens,
causes an injury to a plaintiff."). To bring a Monell claim, a
plaintiff must establish (1) that a constitutionally-protected
right has been violated, and (2) the alleged violation resulted
from municipal policy or custom, or the deliberate indifference
to the rights of citizens. Monell, 436 U.S. at 694-95.

Plaintiff alleges that Defendant violated his Fourteenth
Amendment right to due process. The Due Process Clause of the
Fourteenth Amendment provides that "[n]o State . . . shall
deprive any person of life, liberty, or property, without due
process of law." U.S. Const. amend. XIV § 2. The clause:

> is phrased as a limitation on the State's power to act,
> not as a guarantee of certain minimal levels of safety
> and security. It forbids the State itself to deprive
> individuals of life, liberty, or property without 'due
> process of law,' but its language cannot fairly be
> extended to impose an affirmative obligation on the
> State to ensure that those interests do not come to harm
> through other means.

DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S.
189, 195 (1989).

"Individuals have a constitutional liberty interest in
personal bodily integrity that is protected by the Due Process
Clause of the Fourteenth Amendment." Phillips v. Cnty. of

Allegheny, 515 F.3d 224, 235 (3d Cir. 2008). Plaintiff
specifically alleges that he has been deprived of his bodily
integrity in violation of the Due Process Clause. See Sec. Am.
Cmpl. at ¶¶ 74, 89, 130. Here, Defendant argues that because
Plaintiff alleges he was injured by juveniles at PJJSC,
Plaintiff was effectively harmed by private individuals rather
than the State, or its municipalities, so Plaintiff's claim
cannot survive.

The applicable legal principles were outlined by the
Supreme Court in DeShaney:

> Consistent with these principles, our cases have
> recognized that the Due Process Clauses generally confer
> no affirmative right to governmental aid, even where
> such aid may be necessary to secure life, liberty, or
> property interests of which the government itself may
> not deprive the individual . . . . If the Due Process
> Clause does not require the State to provide its citizens
> with particular protective services, it follows that the
> State cannot be held liable under the Clause for injuries
> that could have been averted had it chosen to provide
> them. As a general matter, then, we conclude that a
> State's failure to protect an individual against private
> violence simply does not constitute a violation of the
> Due Process Clause.

489 U.S. at 196-97 (internal citations omitted).

Plaintiff acknowledges that the State generally does not
have a duty to protect its citizens from acts of violence
committed by private individuals, as the alleged deprivation
must have been "committed by a person acting under color of
state law." Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996)
(quoting Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir.

1995)). However, there are two theories under which "[l]iability can arise under section 1983 for acts committed by a private citizen." Pearson v. Miller, 988 F. Supp. 848, 853 (M.D. Pa. 1997). A plaintiff may argue that (1) the state entered into a special relationship with the plaintiff such that it imposed affirmative duties of care on the state, or (2) that a state-created danger gave rise to Plaintiff's harm. See Kneipp, 95 F.3d at 1204-05, 1211; Pearson, 988 F. Supp. at 853. The viability of Plaintiff's claims will be addressed below.

### 1.   Special Relationship with the State

At oral argument, Plaintiff contended that Defendant entered into a "special relationship" with Plaintiff. Generally, a special relationship with the State may be created by "the State's affirmative act of restraining the individual's freedom to act on his own behalf—through incarceration, institutionalization, or other similar restraint of personal liberty," because that State's action deprives the plaintiff of liberty under the Due Process Clause. Deshaney, 489 U.S. at 200.

Though Plaintiff contends that he had entered into a special relationship with Defendant, a municipality of the State, the Court notes that Plaintiff did not bring a separate section 1983 claim under this theory. Plaintiff only brought two counts under section 1983: one under a state-created danger

12

theory and the other under a failure to warn theory. Regardless, even if Plaintiff had pled that he entered into a special relationship with the State, his claim would still fail as a matter of law.

In this Circuit, the special relationship exception has been extended only to situations involving (1) incarcerated individuals, (2) involuntarily committed mental patients, and (3) foster children. See Nicine v. Morra, 212 F.3d 798, 807-08 (3d Cir. 2000); Lichtenstein v. Lower Merion Sch. Dist., 316 F. Supp. 3d 855, 865 (E.D. Pa. 2018).

Plaintiff contends that he entered into a special relationship with the State because his freedom was restricted when he entered the PJJSC facility because PJJSC employees had to unlock and/or open security doors to allow Plaintiff to access certain areas. However, none of the recognized situations that would trigger a special relationship apply here. By entering PJJSC to complete work on the premises, Plaintiff's status did not change to that of an incarcerated or institutionalized individual. Plaintiff was not at the PJJSC facility pursuant to the coercive power of the State. Rather, he was there voluntarily to perform maintenance work. Other than contending that his liberty was temporarily restrained, Plaintiff does not cite to any authority that would allow the Court to find a special relationship existed here. Thus, to the

13

extent that Plaintiff sought to raise a section 1983 clam under
this theory, Plaintiff's claim fails.

### 2.   State Created Danger Theory

Plaintiff has brought a claim under the state-created
danger theory. A "state may be liable for constitutionally
protected rights, even in the absence of a special relationship
with an individual, when the state, through its affirmative
conduct, creates or enhances a danger for the individual." Brown
v. Pennsylvania Dep't of Health Emergency Med. Servs. Training
Inst., 318 F.3d 473, 478 (3d Cir. 2003). Plaintiff's theory is
that Defendant's employees were aware that the juvenile inmates
had a predisposition towards violent behavior, but still allowed
the juveniles in PJJSC to roam around the facility unsupervised
while also failing to ensure that secured areas were properly
restricted. Defendant contends that Plaintiff cannot sustain a
claim under this theory.

To establish one's rights have been violated by a state-
created danger the plaintiff must show:

> (1) the harm ultimately caused was foreseeable and
> fairly direct; (2) the state actors acted with a degree
> of culpability that shocks the conscience; (3) a
> relationship between the state and the plaintiff existed
> such that the plaintiff was a foreseeable victim of the
> defendant's acts, or a member of a discrete class of
> persons subjected to the potential harm brought about by
> the state's actions . . . ; and (4) a state actor
> affirmatively used his or her authority in a way that
> created a danger to the citizen or that rendered the

14

citizen more vulnerable to danger than had the state not
acted at all.

Sanford v. Stiles, 456 F.3d 298, 304–05 (3d Cir. 2006).

Defendant first argues that Plaintiff has not pled facts
sufficient to meet the first element, that the harm was
foreseeable and fairly direct. To satisfy this element, the
plaintiff must "allege an awareness on the part of the state
actors that rises to level of actual knowledge or an awareness
of risk that is sufficiently concrete to put the actors on
notice of the harm." Phillips v. Cnty. of Allegheny, 515 F.3d
224, 238 (3d Cir. 2008). "[T]he plaintiff must plausibly allege
that state officials' actions precipitated or were the catalyst
for the harm for which the plaintiff brings suit." Quinn v.
Badolato, 709 F. App'x 126, 129 (3d Cir. 2017) (quoting Henry v.
City of Erie, 728 F.3d 275, 285 (3d Cir. 2013)) (citation and
internal quotation marks omitted).

Defendant contends that Plaintiff has not pled facts to
suggest that Defendant was aware of a faulty locking mechanism
on the door or that it was foreseeable that the juvenile inmates
were likely to breach the secured area and attack a third party.
Here, Plaintiff alleges that "unsupervised juveniles were able
to access the area of the facility . . . as a result of a
defective condition on the premises," that PJJSC's employees
were aware of previous breaches in security, that there were

15

"inadequate or non-existent security measures including defective barricades and inadequately monitored juveniles," and that PJJSC's employees were aware that staff frequently failed to inspect the security doors and premises. Sec. Am. Compl. ¶¶ 24, 60, 61, 63, 64, 66, 67. Plaintiff claims that this led to the foreseeable consequence that the juvenile inmates would be able to enter a restricted area and cause harm to another individual. Id. ¶¶ 143, 145, 147, 149.

Though Plaintiff pleads, as a legal conclusion, that Defendant was generally aware of these circumstances, Plaintiff does not provide sufficient factual support that would allow the Court to infer actual awareness. Plaintiff only pleads that PJJSC employees have filed several worker's compensation cases where PJJSC employees alleged they were injured when breaking up fights between juvenile inmates. See Sec. Am. Compl. ¶¶ 45-47.[1] But the allegations referencing past worker's compensation cases do not support Plaintiff's allegations that Defendant had actual knowledge of foreseeable harm to third parties. The worker's

---

[1]    Plaintiff's Second Amended Complaint references the case of Steven Camiel, Claimant/Employee, v. City of Philadelphia, Defendant/Employer, No. 8113920, which is currently pending before the Honorable Workers Compensation Judge Holly San Angelo of the Commonwealth of Pennsylvania. Plaintiff also references Anthony G Dowd, Claimant/employee, No. Appeal Case: A20-0726, 2021 WL 4125559, at *3 (Pa. Work. Comp. App. Bd. Aug. 5, 2021), and Christopher B Clahar, Claimant/employee, No. Appeal Case: A20-0699, 2021 WL 1911283, at *2 (Pa. Work. Comp. App. Bd. Apr. 26, 2021).

compensation cases cited by Plaintiff are entirely
distinguishable from the present situation because those cases
do not involve examples of juveniles entering into secured areas
or instances of juveniles attacking third parties who were
allowed on the premises of PJJSC.

The only fact Plaintiff alleges is that a youth detention
counsellor informed Plaintiff that "attacks like this by
juveniles happen[] all of the time." Sec. Am. Compl. ¶ 21.
However, this generalized and unsourced allegation is
insufficient to show that Defendant had "actual knowledge or an
awareness of risk that is sufficiently concrete to put
[Defendant] on notice" of the harm alleged here, that the
juvenile inmates would breach a secured area due to a faulty
lock and attack a third party. Phillips, 515 F.3d at 238; see
also, e.g., Quinn, 709 F. App'x at 130 (finding the plaintiff
did not satisfy the first element because Plaintiff did not
plead facts "demonstrating that [the defendants] were on notice
of the relevant harm"). Thus, the Court finds that Plaintiff has
failed to plead sufficient facts to support the first element of
Plaintiff's state-created danger claim.

Even assuming that Plaintiff had satisfied the first
element of his state-created danger claim, Plaintiff has failed
to plead facts to support the second element of Plaintiff's

17

claim, i.e., that state actors acted with the requisite degree of culpability.

In Sanford, the Third Circuit provided that, in the context of a state-created danger claim, a state actor must have "acted with a degree of culpability that shocks the conscience." 456 F.3d at 304. "Mere negligence is not enough to shock the conscience." Id. at 311. "The exact degree of wrongfulness necessary to reach the 'conscience-shocking' level depends upon the circumstances of a particular case." Luu v. Esterly, 367 F. Supp. 3d 335, 345 (E.D. Pa. 2019) (quoting Mann v. Palmerton Area Sch. Dist., 872 F.3d 165, 171 (3d Cir. 2017)). In Esterly, Judge Leeson noted that "[i]f the circumstances are highly pressurized, it is necessary to show intentional harm by the state actor; however, if the state actor has the benefit of deliberation, then all the plaintiff needs to show is deliberate indifference." Id. (quoting Mann, 872 F.3d at 171). "In circumstances falling somewhere in between, the relevant inquiry is whether the state actor consciously disregarded a great risk of harm, with the possibility that actual knowledge of the risk may not be necessary where the risk is obvious." Id. (quoting Mann, 872 F.3d at 171) (internal quotation marks omitted).

On the facts pled, the appropriate standard is deliberate indifference "because there is nothing to indicate that [Defendant's employees] faced circumstances requiring a quick

18

decision or that a decision was made under highly pressurized
circumstances." Id. Instead, Defendant's employees at PJJSC had
the time and ability to assess whether the locking mechanisms on
the security doors were functioning properly. See L.R. v. School
Dist. of Phila., 836 F.3d 235, 246 (3d Cir. 2016) (finding that
"the appropriate culpability standard here is deliberate
indifference, since there is nothing to indicate that [a teacher
at issue] faced circumstances requiring him to make a quick
decision.").

Deliberate indifference in this situation "requir[es] a
conscious disregard of a substantial risk of serious harm." Id.
at 246 (quoting Vargas v. City of Phila., 783 F.3d 962, 973 (3d
Cir. 2015)). "[D]eliberate indifference might exist without
actual knowledge of a risk of harm when the risk is so obvious
that it should be known." Id. (citation omitted).

Accepting the facts in Plaintiff's Second Amended Complaint
as true, Plaintiff has failed to allege facts that, if proven,
would establish that Defendant's employees were deliberately
indifferent. Plaintiff has only set forth several conclusory
allegations to support his claim. Plaintiff generally alleges
that Defendant's employees at PJJSC were aware of prior acts of
violence by juveniles detained at PJJSC, including acts of
assault, but Defendant still allowed the juveniles to move
around the facility unsupervised. Sec. Am. Compl. ¶¶ 41, 51, 69.

19

Plaintiff claims that "Defendant, its employees, and the aforementioned decision-makers were aware of numerous prior incidents of violence involving juveniles detained at PJJSC" and of "threats of violence made by juveniles to employees, contractors, and others within the facility." Id. ¶¶ 41, 50. Plaintiff alleges that Defendant allowed the juveniles to roam unsupervised while knowing that there were previous breaches in security, issues with understaffing in the facility, and that the "staff responsible for inspecting security doors and barricades frequently failed to properly conduct inspections." Id. at ¶¶ 58, 60, 64.

To support these generalized allegations that Defendant was aware of prior acts of violence, Plaintiff again references the worker's compensation cases where PJJSC employees were allegedly injured when breaking up fights between juvenile inmates; Plaintiff also points to a 2015 Pennsylvania Labor Relations Board case which noted that security officers had to restrain juveniles due to violent incidents.[2] Id. ¶¶ 45-50. As explained, the cases that Plaintiff cites in his Second Amended Complaint involve situations where correctional officers broke up altercations between juveniles in PJJSC during the course of the correctional officers' employment. These are not examples of

---

[2]    Plaintiff references In the Matter of the Employees of City of Philadelphia, 46 PPER ¶ 64, 2015 WL 500664.

juveniles attacking <u>third parties</u> who were present at PJJSC. The
Court finds that Plaintiff's references to these cases do not
support an inference that Defendant was aware of a risk of the
juveniles entering an unsecured area and injuring a third party,
or that Defendant acted with a conscious disregard towards that
risk. Plaintiff's allegations that there were prior acts of
violence in the facility and the allegation that "Defendant . .
. [was] also aware of numerous threats of violence made by
juveniles to employees, contractors, and others within the
facility" are otherwise conclusory. <u>Id.</u> ¶ 50.

Plaintiff pleads that the allegations of actual knowledge
are based "upon information and belief." It is true that the
Third Circuit has considered whether pleading "upon information
and belief" is sufficient in the context of cases involving Rule
9(b)'s heightened pleading standard. <u>See</u> <u>In re Rockefeller Ctr.</u>
<u>Props., Inc. Sec. Litig.</u>, 311 F.3d 198, 216 (3d Cir. 2002). In
<u>Rockefeller</u>, the Third Circuit held that pleading "upon
information and belief" can be sufficient "[w]here it can be
shown that the requisite factual information is peculiarly
within the defendant's knowledge or control,"[3] as long as there

---

[3]     "This form of pleading finds its parallel in Rule 8(b)'s
provision that a responding party may state he is 'without
knowledge or information' concerning the truth of an averment."
<u>U.S. v. One Palmetto State Armory PA-15 Machinegun</u>
<u>Receiver/Frame, Unknown Caliber, Serial Number LW001804</u>, 115 F.
Supp. 3d 544, 576 (E.D. Pa. 2015).

are no "boilerplate and conclusory allegations" and the plaintiff can "accompany their legal theory with factual allegations that make their theoretically viable claim plausible." Id. (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1418 (3d Cir. 1997)). In McDermott v. Clondalkin Grp., Inc., an unpublished decision, the Third Circuit applied this standard to claims that did not require Rule 9(b)'s heightened pleading requirement, but emphasized that to comply with Rule 8(a), the plaintiff must still "accompany their legal theory with factual allegations that make their theoretically viable claim plausible." 649 F. App'x 263, 267-68 (3d Cir. 2016) (quoting In re Rockefeller, 311 F.3d at 216) (emphasis in original).

Here, there are no allegations or arguments that the information at issue is "peculiarly within the defendant's possession," id., and Plaintiff has not supported his theory with factual allegations that could make his claim plausible. Again, generally pleading "upon information and belief" does not relieve a party from the requirement that they must ultimately plead sufficient facts to state a plausible claim. Thus, the Court finds that Plaintiff has failed to plead sufficient factual support with respect to the second element of his state-created danger claim.

Because Plaintiff has failed to plead sufficient factual support for the first two elements of his state-created danger claim, Plaintiff's claim must be dismissed.[4]

### 3. Failure to Train, Supervise, and Discipline

Plaintiff also brings a Monell claim under the theory that Defendant failed to train, supervise, and discipline its employees with respect to monitoring the juveniles and handling security issues. At oral argument, Defendant averred that this is not a proper theory because, generally, there is no duty to protect an individual from harm done by private actors without a special relationship or state-created danger. See Pearson, 958 F. Supp. at 853-54; J.H. v. City of Philadelphia, No. 06-2220, 2008 WL 3983269, at *12 (E.D. Pa. Aug. 19, 2008). However, Plaintiff alleges that the City's failure to train, supervise, and discipline led to the harm Plaintiff suffered.

A municipality may "be subject to liability for a constitutional violation committed by an employee if that 'employee has not been adequately trained and the constitutional wrong has been caused by that failure to train.'" Martin v. City of Reading, 118 F. Supp. 3d 751, 770 (E.D. Pa. 2015) (quoting City of Canton, Ohio v. Harris, 489 U.S. 378, 387 (1989)). The

---

[4]  Because the Court has already determined that Plaintiff has failed to meet the first two elements of the state-created danger claim, the Court need not reach the remaining elements.

same applies for a municipality's failure to supervise or
discipline. Forrest v. Parry, 930 F.3d 93, 106 (3d Cir. 2019);
Coward v. City of Philadelphia, 546 F. Supp. 3d 331, 334-35
(E.D. Pa. 2021).

A municipality's failure to adequately train, discipline,
or supervise "gives rise to a cause of action under Section
1983 if the deficient training reflects a deliberate
indifference to an individual's civil rights, and is 'closely
related to the ultimate injury.'" Kane v. Chester Cnty. Dept. of
Children, Youth and Families, 10 F. Supp. 3d 671, 688 (E.D. Pa.
2014) (quoting Kline ex rel. Arndt v. Mansfield, 255 F. App'x.
624, 629 (3d Cir. 2007)); Forrest, 930 F.3d at 109 (same).
Typically, deficient training, supervision, or discipline "can
only amount to the requisite deliberate indifference" where the
failure "has caused a pattern of violations." Kane, 10 F. Supp.
at 688 (quoting Berg v. Cnty. of Allegheny, 219 F.3d 261, 276
(3d Cir. 2000)).

Here, Plaintiff has alleged that "Defendant along with its
agents, employees, decision makers and policy makers were aware
of numerous prior occurrences of violence by juveniles at the
facility like the one that occurred with plaintiff" and that
"Defendant, and its employees, agents, and decision and policy
makers, knew that the inadequate training and/or supervision of
their employees with respect to the maintenance of the facility

24

and/or monitoring of dangerous juveniles would frequently, and frequently did, cause the plaintiff and others to be injured and deprived of their civil rights." Sec. Am. Compl. ¶¶ 101, 113. Plaintiff again points to allegations involving the pending worker's compensation cases. Id. ¶¶ 43, 45-47. However, these allegations do not support an inference that there was a pattern of Defendant failing to train or supervise its employees with respect to the maintenance of the facility and supervision of the juveniles.

A claim may also proceed "absent a pattern of violations" in cases where:

> (1) a violation of federal rights may be a highly predictable consequence of a failure to train officials to handle recurrent situations; and (2) the likelihood of recurrence and predictability of the violation of a citizen's rights could justify a finding that [the] policymakers' decision not to train an officer reflected deliberate indifference to the obvious consequence of the policymakers' choice—namely, a violation of a specific constitutional or statutory right.

Kane, 10 F. Supp. 3d at 688 (quoting Kline, 255 F. App'x at 629) (internal quotation marks omitted).

Defendant argues that Plaintiff has not alleged that Defendant was "deliberately indifferent." A policymaker evinces deliberate indifference if:

> in light of the duties assigned to specific officers or employees the need for more or different training [or supervision] is so obvious, and the inadequacy so likely to result in the violation of constitutional rights,

that the policymakers of the city can reasonably be said
to have been deliberately indifferent to the need.

City of Canton, 489 U.S. at 390. In this Circuit, a plaintiff
must show that "(1) municipal policymakers know that employees
will confront a particular situation; (2) the situation involves
a difficult choice or a history of employees mishandling; and
(3) the wrong choice by an employee will frequently cause
deprivation of constitutional rights." Carter v. City of Phila.,
181 F.3d 339, 357 (3d Cir. 1999); accord Coyett v. City of
Phila., 150 F. Supp. 3d 479, 485-86 (E.D. Pa. 2015).

Here, Plaintiff identifies three policymakers: (1) Michael
Scott, the Executive Director of PJJSC, (2) Deana Ramsey, the
principal of PJJSC, and (3) Cynthia Figueroa, the Commissioner
of DHS. Plaintiff alleges that these individuals knew that
Defendant's "employees would encounter civilian contractors
performing work within PJJSC, but failed to adequately train
them to handle said situations and failed to supervise them to
ensure they were appropriately handing these issues," and that
they "were aware of numerous prior occurrences of violence by
juveniles at the facility like the one that occurred with
[P]laintiff." Sec. Am. Compl. ¶¶ 100, 101. However, Plaintiff
does not allege any facts to support exactly how these
policymakers were individually or collectively aware of prior
occurrences of violence, what those prior occurrences were, and

26

how they failed to adequately train employees to handle such
situations. Plaintiff merely alleges that the policymakers acted
"with deliberate indifference, failed to take or institute
necessary precautions to provide proper training, policies,
procedures, and adequate security." Id. ¶¶ 30, 34, 38. These
are mere conclusory allegations.

In response, Plaintiff concedes that it cannot identify
another situation where a civilian contractor was injured by a
juvenile inmate, but contends that it was highly predictable
that a civilian could be injured if Defendant continued to fail
to take action. Plaintiff points to a recent Seventh Circuit
case to argue that "in a narrow range of circumstances,
deliberate indifference could be found when the violation of
rights is a highly predictable consequence of a failure to
provide officers what they need to confront recurring
situations." J.K.J. v. Polk Cnty., 960 F.3d 367, 380 (7th Cir.
2020) (internal quotation marks and citation omitted). For
support that this was a "highly predictable consequence,"
Plaintiff again points to his allegations that describe the
prior worker's compensation cases. See Sec. Am. Compl. ¶¶ 45-47.
However, even if taken as true, these allegations do not support
an inference that the policymakers should have known or
predicted that the juveniles would breach a secured area and
attack a contractor, or another third party, on the premises.

Twenty-twenty hindsight is no substitute for the requirement that Plaintiff show that the policymakers were aware of the "highly predictable consequence" of their alleged failure to act.

Accordingly, the Court finds that Plaintiff has not pled facts sufficient to support a finding of deliberate indifference, and so the claim will be dismissed.

## IV.  CONCLUSION

For the foregoing reasons, Defendant's motion will be granted. Because Defendant has not waived immunity with respect to Plaintiff's negligence claim, that claim will be dismissed with prejudice because any further amendment would be futile. See In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997) ("Among the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility."). However, Plaintiff's two claims under 42 U.S.C. § 1983 will be dismissed without prejudice and with leave to amend.

An appropriate order follows.